UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Plaintiff,<br><br>v.<br><br>TOKIO MARINE & NICHIDO FIRE INSURANCE COL, LTD. (U.S. BRANCH) A CORPORATION AND DOES 1 THROUGH 25, INCLUSIVE,<br><br>Defendants. | Case No.: 10-CV-1733-JLS-MDD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 69) |

Presently before the Court is Defendant Tokio Marine & Nichido Fire Insurance Co., Ltd. (U.S. Branch) ("Defendant" or "Tokio Marine")'s Motion to Dismiss ("MTD") Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("Plaintiff" or "National Union")'s Second Amended Complaint ("SAC"). (ECF No. 69.)

For the reasons stated below, the Court **GRANTS** Defendant's MTD.

## BACKGROUND

### I.  Factual Background

The unfortunate circumstances underlying this case have been recounted both to and by the Court on numerous occasions. (*E.g.*, ECF Nos. 10, 16, 19, 33, 34.) Accordingly, the Court here only briefly summarizes facts relevant to the MTD.

On August 28, 2009 Mark Saylor took his Lexus to El Cajon Luxury Cars, Inc. d/b/a Bob Baker Lexus ("Bob Baker Lexus") for service. (SAC ¶ 5.) Bob Baker Lexus loaned Mr. Saylor a vehicle through a program known as the Lexus Customer Convenience System ("LCCS"), which Toyota made available to dealers at the dealers' election. (*Id.*) While Mr. Saylor was driving the car that night, the vehicle's accelerator allegedly prevented him from slowing down or stopping the vehicle, resulting in a fatal crash that killed Mr. Saylor and three other members of his family. (*Id.* ¶ 9.)

Seven months later, remaining members of the Saylor family ("Saylor Survivors") filed in San Diego Superior Court an action for wrongful death against Toyota and Bob Baker Lexus. (*Id.* ¶ 17.) Toyota eventually settled with the Saylor Survivors, and the Saylor Survivors amended their complaint to assert only one cause of action: negligence against Bob Baker Lexus for breach of the "duty of care to Decedents and Plaintiffs regarding the maintenance, care and servicing of the SUBJECT LEXUS." (MTD at 5; SAC ¶ 18.) In May 2015, Bob Baker Lexus settled the claim for a total payment of $10 million. (*See* SAC ¶ 21.)

In June 2011 Bob Baker Lexus—National Union's insured—filed suit against Tokio Marine in this Court seeking declaratory and monetary relief regarding Defendant's alleged duty to defend and indemnify Bob Baker Lexus. *El Cajon Luxury Cars, Inc. v. Tokio Marine & Nichido Fire Ins. Co.*, 11-cv-1248 JLS (MDD) ("*El Cajon*"). The crux of the action turned on whether a particular exclusion in the relevant Tokio Marine policy (the "Completed Operations Exclusion") barred coverage under the facts of the case. (*See, e.g.*, *id.*, ECF Nos. 7–71.) Multiple motions to dismiss, extensive briefing, and a motion for reconsideration followed. (*Id.*)

In July 2013, the Court granted Tokio Marine's motion for reconsideration, concluding that the Completed Operations Exclusion was triggered by the facts underlying Bob Baker Lexus's alleged liability in the wrongful death action. (*Id.*, ECF No. 54.) Because Tokio Marine therefore had no coverage obligation to Bob Baker Lexus under the then-current wrongful death theory, the Court dismissed Bob Baker Lexus's claims without

prejudice and stayed the case pending resolution of the underlying wrongful death action.[1] (*Id.*, ECF No. 54.) Ultimately, the underlying dispute resolved and the Court lifted the stay in the *El Cajon* action, ultimately granting Tokio Marine's unopposed motion to dismiss with prejudice. (*Id.*, ECF Nos. 66, 71.)

## II.     Procedural Background

Several months after the underlying wrongful death action was filed, National Union filed a declaratory judgment action against Tokio Marine in San Diego Superior Court. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Tokio Marine & Nichido Fire Ins. Co.*, 37-2010-96106-CU-IC-CTL. The case was ultimately removed to this Court, (*see* Compl., ECF No. 1), and forms the basis of this MTD.

After various motion practice Plaintiff filed an amended complaint ("FAC"), the Court dismissed Plaintiff's first claim for relief under the FAC, and the Court stayed further litigation pending resolution of the underlying wrongful death action. (ECF Nos. 33, 39.) In May 2015, the Court was advised that the underlying suit had been resolved and lifted the stay. (ECF Nos. 52, 54.) On March 4, 2016 Plaintiff filed its SAC. (ECF No. 67.) On March 25, 2016 Defendant filed the instant MTD. (ECF No. 69.) The matter was taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 74.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the

---

[1] The Court did so because although the facts underlying the Saylor Survivor's then-current theory of Bob Baker Lexus's liability triggered the Completed Operations Exclusion to the Tokio Marine policy (i.e., coverage under the Tokio Marine policy was inapplicable to the suit as then-currently formulated), the Court was concerned that "an unanticipated theory of liability that might be covered by the policy" could "arise[] in the course of the underlying proceedings." (*Id.*)

pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

### I. Request for Judicial Notice

Defendant moves the Court to take judicial notice of eight exhibits—all judicial proceedings—in support of its MTD. (Req. for Judicial Notice 1–3, ECF No. 69-2.) Plaintiff does not oppose Defendant's request. The Court finds that each document is

properly judicially noticed. Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

## II.     MTD

Defendant argues that Plaintiff is collaterally estopped from asserting the SAC's claims or, in the alternative, that the Court's reasoning in its July 1, 2013 Order in the related *El Cajon* case applies with equal force to the present litigation. Defendant correctly asserts that accepting either contention will end the case because the applicability of the Completed Operations Exclusion is a threshold issue controlling the viability of all of Plaintiff's claims. The Court concludes both that Plaintiff is collaterally estopped from asserting the SAC's claims and that the reasoning of the Court's July 1, 2013 Order in *El Cajon* applies with equal force to the present case, i.e., Plaintiff's new argument against the applicability of the Completed Operations Exclusion is without merit. The Court addresses each contention in turn.

When a case is brought in federal court based on diversity jurisdiction the Court must apply the preclusion "law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Because the present case was removed to federal court based on diversity of citizenship jurisdiction, (Order Den. Pl.'s Mot. to Remand to State Ct., ECF No. 15), the Court must therefore apply California preclusion law.

In California, the doctrine of collateral estoppel "precludes a reexamination as between the parties or their privies of any issue necessarily decided" in prior litigation if the same "issue is involved in any subsequent lawsuit brought on a different cause of action." *Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098, 1101 (Cal. 1978) (en banc) (citing *Bernhard v. Bank of Am.*, 122 P.2d 892, 894 (Cal. 1942)). Collateral estoppel applies only if (1) the issue decided in a prior adjudication is identical with the issue presented in the current action; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Id.* at 1102. In the present case—as in *El Cajon*—the issue

1 of whether the Completed Operations Exclusion applies is the threshold issue to
2 Defendant's liability. Further, *El Cajon* resulted in a dismissal with prejudice under
3 Federal Rule of Civil Procedure 12(b)(6) (*El Cajon*, ECF No. 72)—a final judgment on the
4 merits, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal
5 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment
6 on the merits.'"). Thus, the first two requirements are met and the privity requirement is
7 all that remains.

8 Plaintiff urges that in the present case the privity requirement is not met because
9 Plaintiff seeks equitable contribution from Tokio Marine, whereas in the *El Cajon*
10 proceeding the plaintiff Bob Baker Lexus exercised a right exclusive to the insured in
11 attempting to enforce the Tokio Marine contract. Defendant argues that the cases Plaintiff
12 relies on for support are both distinguishable. The Court agrees with Defendant.

13 Plaintiff cites *Acceptance Insurance Co. v. American Safety Risk Retention Group,*
14 *Inc.* for the proposition that privity is lacking when the prior proceeding involved rights
15 "exclusively based on [an] insurance contract" and the present proceeding turns on "a rule
16 of equity" existing "independently, as opposed to derivatively, of the insured's rights."
17 08cv1057-L, 2011 WL 3475305, at *3 (S.D. Cal. Aug. 9, 2011) (citing *Fireman's Fund*
18 *Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293–94 (1998)). However, not
19 only did the *Acceptance Insurance Co.* defendants fail to challenge the plaintiff's position,
20 the suit was one for retraxit, i.e., voluntary dismissal, *see Rice v. Crow*, 81 Cal. App. 4th
21 725, 733 (2000) ("The primary features of a common law retraxit were that it was made <u>by
22 the plaintiff</u> in person and in open court." (emphasis added)); *Roybal v. Univ. Ford*, 207
23 Cal. App. 3d 1080, 1085 (1989). The application of collateral estoppel in *Acceptance*
24 *Insurance Co.* thus implicated very different judicial considerations than those the
25 underlying grant of 12(b)(6) dismissal with prejudice present in this case.

26 The next case, *Fireman's Fund Insurance Co.*, distinguishes between inter-insurer
27 claims for equitable contribution and claims based on equitable subrogation. 65 Cal. App.
28 4th at 1296 (addressing appellee's contention that "contribution is merely a subset or type

of equitable subrogation" and noting that confusing the doctrines can have "the unintended result in some cases of defeating [their distinct] policy goals"). However, the *Fireman's Fund* court also explicitly stated that the "aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk . . . ." *Id.* (emphasis added). In the present case, while Plaintiff's ultimate contention is obviously that Defendant covered the same underlying risk, the threshold issue here—as in *El Cajon*—is whether the Tokio Marine policy applies to the underlying conduct of the insured at all.

And even if the Court were to find Plaintiff's cited cases to be directly on point, there is a more fundamental flaw in Plaintiff's argument. California has explicitly recognized that privity "is a concept not readily susceptible of uniform definition" and that the concept has been expanded to encompass "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify the application of collateral estoppel." *Clemmer*, 587 P.2d at 1102 (citations omitted). The ultimate restraints placed on this concept are the due process requirements that the party to be estopped must have had a community of interest with, and adequate representation by, the losing party in the first action, and that the party to be estopped should reasonably have expected to be bound by the prior adjudication. *Id.* at 1102.

> Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.

*Id.* at 1102–03.

In the present case, it is clear that collateral estoppel is appropriate. Although Plaintiff was not a party to the *El Cajon* proceedings there is no indication that Bob Baker Lexus did not adequately represent Plaintiff's interests in attempting to enforce the Tokio Marine contract. As previously summarized in this Order, the *El Cajon* parties vigorously litigated the issue of whether the Completed Operations Exclusion applied given the

underlying facts. In total, there were at least twelve briefs submitted addressing the issue in its various iterations, and there is no indication from the parties to this action that the factual circumstances warrant further review of the matter. Further, Plaintiff should reasonably have expected to be bound by the *El Cajon* adjudication; Plaintiff had paid $9 million to cover the balance of the settlement in the underlying wrongful death action and knew or should have known that Tokio Marine's contention that the Completed Operations Exclusion applied was the reason Plaintiff had been required to pay the full amount. (*See* Pl.'s Resp. in Opp'n to Mot. to Dismiss, Ex. 1, at ¶¶ 1–3, ECF No. 36-1 (requesting Court take notice of pre-consolidation *El Cajon* cases); *El Cajon*, ECF No. 4 (Bob Baker Lexus requesting *El Cajon* Court take notice of present case because both actions involved "(1) the same defendant; (2) the same Tokio Marine policies; (3) the same underlying action; and (4) similar claims that Tokio Marine owes defense and indemnity obligations under the policies for the underlying action").) Additionally, applying collateral estoppel in the present case furthers all of the goals set forth by the California Supreme Court in *Clemmer*—it promotes judicial economy, guards against inconsistent judgments, and protects against vexatious litigation in this nearly six-year-old dispute.

Finally, even if the Court did not apply collateral estoppel to the present case, Plaintiff's new argument[2] that the Completed Operations Exclusion is inapplicable in the present case is unavailing. Plaintiff argues that "work" as defined by the Tokio Marine policy was not completed in this case, relying on the specific Tokio Marine provision that "work will be deemed completed . . . [w]hen all of the work called for in your contract has been completed." (*See* SAC, Ex. B, pt.3, at 35, ECF No. 67-4.) Thus, Plaintiff asserts, because Bob Baker Lexus contracted with Toyota under the LCCS program for the particular car involved in the accident, the LCCS contract term specifying that Bob Baker

---

[2] Plaintiff's remaining arguments regarding the Completed Operations Exclusions are all either exactly or substantively identical to arguments previously presented to and decided by the Court both in this litigation and in *El Cajon*. Because the Court finds no reason to disturb earlier orders, it concludes that Plaintiff's repeated arguments again fail.

must periodically service and maintain each vehicle acquired under the LCCS program controls the above provision of the Tokio Marine policy. But this argument proves too much. Accepting Plaintiff's contention would mean the Tokio Marine exclusion would <u>never</u> apply. True, once the vehicle was removed from the LCCS program Bob Baker Lexus would have no further obligation to service and maintain, (Pl.'s Opp'n to MTD 10–11), but then the vehicle would also be completely removed from the relevant Tokio Marine coverage, (*see id.* at 4 ("Tokio Marine's . . . policies were . . . issued to Bob Baker Lexus specifically in order to provide coverage for the LCCS program."); SAC ¶ 11). Further, the Completed Operations Exclusion specifies that "[w]ork that may need service, maintenance, correction, repair or replacement, <u>but which is otherwise complete</u>, will be treated as completed." (SAC Ex. B, pt.3, at 35, ECF No. 67-4 (emphasis added).) Plaintiff's reading of the Exclusion would render this clause superfluous as well.

Reading the above provisions in concert, the Court thus finds no reason the Completed Operations Exclusion should effectively be rendered inapplicable for the entire duration of the LCCS contract. *See Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 572 (Cal. 1999) (noting that, when possible, intent of contracting parties should be "infer[red] . . . solely from the written provisions of the insurance policy" and that if the "policy language 'is clear and explicit, it governs'" (citing *Bank of the W. v. Sup. Ct.*, 833 P.2d 545, 552 (Cal. 1992) (en banc))).

///
///
///
///
///
///
///
///
///

## CONCLUSION

In sum, the threshold issue of whether the Completed Operations Exclusion applies was previously decided by the Court in *El Cajon*, and the Court here finds that Plaintiff has not demonstrated adequate reason to further litigate the issue. Accordingly, Plaintiff is estopped from further arguing this issue, and because Plaintiff's claims all depend on the success of such argument the Court **GRANTS WITH PREJUDICE** Defendant's MTD.

**IT IS SO ORDERED.**

Dated: September 27, 2016

Hon. Janis L. Sammartino
United States District Judge